CHOCTAW COUNTY v. JESSE HUGHES.

1. COUNTIES.    *Courthouse supplies.    Board of supervisors.    Code* 1892, § 296.

   It is the province and duty of the board of supervisors, under Code 1892, § 296, so providing, to properly furnish the courthouse and supply all county officers with necessary record books, stationery, furniture, etc.

2. SAME.    *Chancery and circuit courts.    Code* 1892, § 926.

   The circuit and chancery courts, however, are respectively empowered, under Code 1892, § 926, so providing, to procure, in case the board of supervisors has failed to do so, the necessary record books, stationery, furniture, etc., belonging peculiarly to the court exercising the power, but have no authority to procure other such articles for the county.

3. SAME.    *Mode of procedure.*

   Under Code 1892, § 926, the clerk should first ask the court to make an allowance for the purchase of the necessary articles, and the court, if it approve the application, in whole or in part, should direct the clerk what to purchase, limiting the sum to be expended.

FROM the chancery court of, second district, Choctaw county. HON. ADAM M. BYRD, Chancellor.

The suit was a proceeding by motion made by Hughes, appellee, in the chancery court for an allowance of $811.80 on ac-

count of a purchase by appellee, as chancery clerk, of furniture, shelving for record deed books, etc., placed in the chancery clerk's offices:

Hughes, the appellee, chancery clerk of Choctaw county, needed additional shelves for his records of deeds. At the October, 1901, meeting of the board of supervisors one Heflin was employed to put in the needed shelves for $7.50. Heflin delayed the work, and at the December term, 1901, the clerk brought the matter before the board again, and showed that the work had not been done but the board did not then take action in the premises. On December 25th, and at other times, the clerk spoke to individual members of the board about it, and got two members together, who discussed it with him. At each discussion they would tell him that a man had been employed to do the work. Some time after the 25th of December, 1901, Barron, a member of the board, asked the clerk to give them until the 15th of January to have the work done, to which the clerk agreed. The work was not done on the 15th of January, 1902, and on the 17th of January the clerk wired Sykes, the representative in this state of the Walker, Evans & Cogswell Company, and Sykes came to Ackerman, the county site, at once, and made a contract with the chancery clerk, appellee Hughes, to furnish the shelving at a cost of $811.80. The shelving furnished is of good quality, and the court found the price agreed upon to be reasonable. The clerk testified that shelf room was needed for from eight to ten books, and that the shelving Heflin would have made for $7.50 would, so far as concerns mere space, have been ample. The account was presented to the board of supervisors at the June, 1902, meeting, and rejected; and it was again rejected at the August term. No appeal was taken from the judgment of the board disallowing it. The claim was presented for allowance to the September, 1902, term of the chancery court of the county by motion. The county, by its board of supervisors, appeared and objected but

it was allowed. From the decree allowing the claim the county appealed to the supreme court.

Section 296 of the code of 1892 is in the following words: *"To furnish court house, etc.*—The board of supervisors shall provide for properly furnishing the court house and for supplying all county offices with necessary record books, stationery, seals, presses, iron safes, tables, chairs, furniture, and all other necessary articles, and shall provide the chancery clerk's office with a copy of the field notes of the United States survey, transcripts of records of other counties which relate to or affect titles of property in its county, the original entries of land and the necessary township maps, and provide for the safe and orderly keeping of all the records thereof, and shall make all needful allowances, payable out of the county treasury, therefor; and, on the order of the circuit court or the chancery court, shall allow sums expended for supplying the offices and court rooms with all such necessary articles; but an allowance shall not be made for printing in record books, or conveyances, nor for stationery for stenographers."

Section 926 of said code is in these words: *"Allowance for Stationery, etc.*—The circuit court and chancery courts shall make allowance to the clerks thereof of all needful sums for supplying the offices and court rooms with necessary stationery, furniture, books, presses, seals and other things necessary for the same, and for the safe keeping of the books, records and papers belonging thereto; and such allowance shall be certified to the board of supervisors."

*Daniel & Dobbs,* for appellant.

An order from the chancery court was a condition precedent to the right of the appellee to purchase the shelving in controversy. The question of the necessity and the sum to be expended for such purpose was a question first to be considered and settled by the court and authority given to the clerk by an order of the court before he could make the purchase. He has

no more power than an ordinary citizen to make such purchase until this question is settled by the court, and authority given him to do so by an express order from the court. His action in making the purchase and removing the old shelving from the vault and placing the new metallic shelving in place of the old was unauthorized. Code 1892, § 926.

The board of supervisors had exclusive jurisdiction of the matter and it only had the right to make the purchase of the shelving for the county. Sec. 296, Code 1892, provides that "the board of supervisors shall provide for properly furnishing the court house, and for supplying all county offices with necessary record books, stationery, etc. * * * furniture, and all other necessary articles. * * * and on the order of the circuit court and the chancery court shall allow all sums expended for supplying the offices and court rooms with all such necessary articles." This statute is merely declaratory of the inherent right which belonged to the board of supervisors under our system of government. Its members are citizens of the county and must be freeholders and are supposed to be men of administrative ability. They are elected by the people to administer the affairs of the county, to levy the tax and to expend the money collected therefrom for the best interest of the people. They are selected because of their knowledge of the needs of the county and of the ability of the county to supply these needs. It is the policy of our government for each county to control its own internal affairs uninterrupted by the courts or otherwise. They are the legislators of the county and have general jurisdiction over its internal affairs, and so long as they exercise these privileges and perform these duties according to law, they are not to be interfered with by an outside authority, however high. The matter in controversy was a county affair. Sec. 926, Code 1892, *supra,* under which section the court allowed the account in controversy, provides, "The circuit and chancery courts shall make allowances to the clerks thereof of all needful sums for supplying the offices and courtrooms with necessary stationery, furni-

ture, * * * and other things necessary for the same" (that is, the courtrooms and the offices of the clerks of the courts) "and for the safe-keeping of the books, records and papers belonging thereto; and such allowance shall be certified to the board of supervisors." The purpose and intent of this section is to give the circuit and chancery courts the authority to supply the court rooms, where they hold court, with necessary furniture, etc., necessary for the carrying on and holding their respective courts and to provide for books, records, etc., for their respective clerks, relating to the business of the court, and to provide equipment for the safe-keeping of the same, and nothing further.

Aside from all the objections stated above, we submit to the court that the evidence taken in its most favorable light to appellee is not sufficient to sustain the order of the court allowing the account. The pre-requisite to granting the order for the allowance, if the court have the power to do so, was that the shelving which was furnished "was necessary for the safe-keeping of the books and record belonging to the office." The evidence negatives this prerequisite.

*J. N. Flowers,* Assistant Attorney General, on same side.

This case was not in the chancery court on appeal from the judgment of the board of supervisors, because such appeals can be prosecuted to the circuit court only, under § 79 of the code. It is not contended by appellee that he appealed to the chancery court from the judgment of the board.

The proceeding is not a suit against the county on a claim rejected by the board. No process was issued and no bill was filed.

The only remaining character to give the proceeding is that of an independent step taken by appellee to get the claim allowed, ignoring the action of the board of supervisors in refusing to allow the claim and in defiance of said judgment of the board. It is in this light that the case must be considered.

If the claim had been presented to the chancery court in the first instance, that court could not have allowed it. The chancery court's authority, if it has any, must be found in § 926 of the code.

The section only gives the chancery court powers incidental to the business which it is required to do, to reimburse the clerk for money which it has been necessary for him to pay out in providing for his urgent needs. It never was intended to give the chancery court concurrent jurisdiction with the board of supervisors over all questions of expenditure for furnishing the chancery clerk's office.

The judgment of the board of supervisors rejecting the claim is a final adjudication until the same is displaced in some manner provided by law. *County of Yallobusha* v. *Carbry,* 3 Smed. & M., 546; *Attala County* v. *Grant,* 9 Smed. & M., 77; *Carroll* v. *Tishomingo County,* 28 Miss., 38; *Arthur* v. *Adam,* 49 Miss., 404; *Lawrence County* v. *Brookhaven,* 51 Miss., 68; *Klein* v. *Board of Supervisors,* 54 Miss., 254; *Clay County* v. *Chickasaw County,* 63 Miss., 289; Black on Judgments, § 532 (2d ed.); *Colusa County* v. *DeJarnett,* 55 Cal., 375; *Sioux County* v. *Jameson,* 43 Neb., 265; s. c., 61 N. W., 596; *Maxwell* v. *Board of Supervisors,* 119 Ind., 20; s. c., 19 N. E., 617.

*Hughston & Seawright,* and *J. W. Barron,* for appellee.

The court was authorized to make the allowance to the clerk by Code 1892, § 926, and acting on the proof taken before him he held that the furniture was necessary for the safe-keeping of the records, books, etc.

The clerk acted wisely in buying the metallic furniture. The public interest demands that the records, documents and papers appertaining to the chancery clerk's office shall be preserved and protected with the greatest care, and no spirit of mere parsimony should be exercised by public officials who are entrusted with the duty of caring for valuable and public records. The clerk purchased "up-to-date," convenient, and necessary and

lasting furniture.  In addition to the metallic roller shelving, he also supplied his office with two fire proof, steel cupboards in which are kept valuable public documents and papers.  The evidence shows that ample funds were in the county treasury at the time to pay this bill.

WHITFIELD, C. J., delivered the opinion of the court.

The board of supervisors is the general representative of the county in all fiscal matters.  This has been its character, and this is its function, time out of mind, under our system of government.  Under Code 1892, § 296, it is made its duty primarily to furnish the courthouse and every county office therein with everything needed for the courtroom or for said offices.  Primarily, it is the duty of said board, therefore, to furnish the courtroom and the chancery clerk's office with even those things which the chancellor, under Code 1892, § 926, may order the chancery clerk to purchase as necessary for the courtroom and the chancery clerk's office under that section.  But there is a class of things which, if the board of supervisors do not furnish, the chancellor may order the chancery clerk to procure; and that class of things embrace those enumerated in code, § 926, which are "necessary stationery, furniture, books, presses, seals, and other things necessary for the same (that is, other things of the same kind), and for the safe keeping of the books, records and papers belonging thereto."  The phrase "books, records and papers belonging thereto"—that is, belonging to the chancery clerk's office and the courtroom in this case—means such "books, records and papers" only as belong to the court as a chancery court; such as are needed and used by the court or the clerk in matters pertaining to the procedure and business of the chancery court as such—as, for example, all the various dockets; all the files, with the papers in the case, of every description; all minute books; books for final record of decrees; all books containing the vacation acts of the clerk, etc.  These "books, records and papers" belonging to the said office and

the said court, and these only, are those "for the safe-keeping" of which the chancellor may make an allowance. The larger part, perhaps, of "the books, records and papers" kept in the chancery clerk's office, are "books, records and papers" of a wholly different kind, with which the chancery court, as a court, has nothing to do. For example, the assessment rolls of the county; the records containing the minutes and proceedings of the board of supervisors; all petitions of every kind the law authorizes to be presented to the board of supervisors, with all papers relating thereto; the record books containing the record of conveyances of land in the country; and various other books, records and papers belonging to the office of chancery clerk, of which the clerk is the proper custodian in his capacity as clerk of the board of supervisors and county auditor. See, among others, §§ 2454, 2455, 2456, 2457 and 1991 (v) (hh) and § 327 of the code of 1892. This latter class of "books, records and papers" constitutes those for the safe-keeping of which the board of supervisors alone can provide. In short, the distinction is between that class of books, records and papers, which belong peculiarly and properly to the administration of all the business of the chancery court as such, on the one hand, and all books, records and papers not so pertaining to the administration of the affairs of the court as such, on the other hand. Both of these classes of books, records and papers the board of supervisors is under the primary duty to provide. If it fails to provide the former kind of the two just mentioned, then the chancery court may order the clerk to supply them. If it fails to supply the books, records and papers of the second kind just mentioned, the chancery court has no power to order the clerk to supply them. It is only in this way that Code §§ 296 and 926 can be harmonized. But this construction does harmonize them, and is clearly the correct construction. The legislature did not intend by Code § 926 to give either the circuit or the chancery court power to provide for the safe-keeping of any other books, records and papers than those which peculiarly

---

---

and properly pertain to the administration of the business of such courts respectively. Provision for the safe-keeping of all other books, records, and papers the law committed to the board of supervisors, the general county agent in such matters.

One other observation: It is perfectly clear that the procedure under Code § 926 should be as follows: The clerk should request the chancery court to make the allowance for the purchase of such receptacles as might be needed "for the safe-keeping," etc. The chancellor should act on this request, and direct the clerk as to what he should procure—that is, what shelves, etc.—limiting also the amount to be expended. After the clerk shall have made the purchases, he should report the same, with the sums expended, to the chancellor, who should then, if he finds them correct, approve the allowance. It is not for the clerk, in the first instance, to buy, and for the chancellor simply to assent to this action of the clerk. The law intends that the chancellor shall exercise his discretion as to what articles should be bought, and as to what prices shall be paid, and we think the statute means that the chancellor must do both before the clerk is empowered to make the purchases at all; otherwise the clerk will be invested with the discretion which the law committed to the chancery court alone. In this case nearly the whole of the bill is for roller shelves, designed to contain books in which are recorded land conveyances; in other words, records not pertaining peculiarly to the business of the chancery court as such. Again, the chancellor did not, in this case, first direct the clerk what "needful things to purchase for the safe-keeping," etc., nor fix the price to be paid. The clerk acted on his own initiative, without any authority so to do. The case of *Jones* v. *Board of Supervisors Lee County* (Miss.), 12 South., 341, does not conflict with these views. The issues here involved were not there considered. The chancellor there had "recommended the allowance to the board of supervisors, asking them to make the allowance." We simply held that, where the chancellor has exercised the power conferred by § 926,

the only object of the reference by him of the allowance he has already made is to give the board notice of the amount for which the law requires it in such case to issue its warrant. We, in that opinion, three several times indicated that we were not expressing any opinion as to whether the account was a proper one; saying, "if the account was proper," etc. We held nothing as to whether the claim there presented was or was not a proper allowance for the chancellor to make, for it was not involved. It follows, necessarily, that the decree must be reversed, and the petition dismissed.

*Reversed and Dismissed.*